```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - X
NATIONAL CITY CORPORATION, formerly     :
known as INFORMATION LEASING CORPORATION,         ECF CASE
subservice agent to WELLS FARGO BANK    :
MINNESOTA NATIONAL ASSOCIATION, solely
in WELLS FARGO'S capacity as Indenture   :        04 Civ. 7108 (WCC)
Trustee under a Third Amended and
Restated Indenture among TERMINAL       :
MARKETING, TERMINAL FINANCE CORP., II
and WELLS FARGO BANK MINNESOTA NATIONAL :
ASSOCIATION,
                                        :         OPINION
                Plaintiff,                        AND ORDER
                                        :
        - against -
                                        :
SUFFOLK RESEARCH GROUP, INC., THOMAS
UZZO and BEATRICE UZZO,                 :

                Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                              PERETORE & PERETORE, P.C.
                              **Attorneys for Plaintiff**
                              191 Woodport Road
                              Sparta, NJ 07871

FRANK PERETORE, ESQ.

       Of Counsel

                              POLIN, PRISCO & VILLAFANE
                              **Attorneys for Defendants**
                              One School Street, Suite 206
                              Glen Cove, NY 11542

ARMAND J. PRISCO, ESQ.

       Of Counsel

**CONNER, Senior D.J.:**

Plaintiff National City Corporation ("National")[1] brings the instant action against defendants Suffolk Research Group, Inc. ("Suffolk"), Thomas Uzzo and Beatrice Uzzo (collectively, the "defendants") alleging breach of contract, promissory estoppel, unjust enrichment and conversion based on defendants' alleged default on a series of leases.[2] In the present motion, defendants move for dismissal or, in the alternative, to transfer venue and to dismiss all claims as against Beatrice Uzzo. Plaintiff moves for summary judgment or, in the alternative for seizure and for leave to amend the Complaint. For the reasons stated hereinafter, defendants' motion to transfer venue is granted. Consequently, we decline to consider the remaining motions submitted by the parties.

## BACKGROUND

**I.    Factual Allegations**

This action arises out of three leases for equipment involving plaintiff as Lessor[3] and Suffolk as Lessee. Plaintiff alleges that defendants defaulted on each of the following described leases and that pursuant to the terms of each lease, defendants are additionally liable to plaintiff for, *inter alia*, contractual attorneys' fees and immediate and permanent title and possession of the equipment that is the subject of each lease. (Pl. Mem. Supp. Summ. J. at 4, 5, 7.)

---

[1] National, formerly known as Information Leasing Corporation, is a subservice agent to Wells Fargo Bank MN National Association, solely in Wells Fargo's capacity as Indenture Trustee under a Third Amended and Restated Indenture among Terminal Marketing, Terminal Finance Corporation, II and Wells Fargo Bank Minnesota National Association.

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity.

[3] Although plaintiff was not the original Lessor to the leases in question, plaintiff is the party to whom the amounts under the leases are owed, as explained *supra*, section D. of this Part.

1

A.  **Transaction I**

On or about January 24, 1999, Suffolk entered into and executed Equipment Lease No. 3219 ("Lease 3219"), as Lessee, with The Terminal Marketing Company, Inc., as Lessor, leasing the equipment listed in the Equipment List attached thereto. (*Id*. at 3.) On or about January 24, 1999 and January 26, 1999, Thomas Uzzo and Beatrice Uzzo, respectively, each entered into and executed a Guaranty Agreement whereby they guaranteed payment by Suffolk pursuant to Lease 3219. (*Id*.) On or about August 17, 2003, Suffolk entered into a Lease Modification Agreement which modified the payment structure under Lease 3219. (*Id*.) Plaintiff alleges that Suffolk defaulted under the terms of Lease 3219 in that it failed to make the required monthly payments due February 27, 2004 and each month thereafter. (*Id*.)

Plaintiff, who obtained all rights to this transaction, alleges that it demanded payment, but that defendants "refuse and continue to refuse to make payment of the remaining indebtedness." (*Id*. at 4.) Plaintiff alleges that pursuant to the terms of Lease 3219, plaintiff declared Lease 3219 in default and demanded the accelerated balance, plus late charges, in the amount of $38,222.27.[4] (*Id*.) Plaintiff maintains that Thomas Uzzo and Beatrice Uzzo, pursuant to their respective guaranties, are indebted to plaintiff for all amounts due and owing under Lease 3219. (*Id*.)

B.  **Transaction II**

On or about August 3, 2000, Suffolk entered into and executed Lease No. 4096 ("Lease

---

[4] Plaintiff calculates the balance owed on Lease 3219 as follows: amount financed ($213,183.36) less payments made ($177,482.47) plus late charges ($2,421.38) plus purchase option ($100.00) for a total amount owed of $38,222.27, plus interest, late charges and attorneys' fees and costs. (*Id.*)

4096"), as Lessee, with The Terminal Marketing Company, Inc., as Lessor, leasing the equipment listed in the Equipment List attached thereto. (*Id*.) On or about August 3, 2000, Thomas Uzzo entered into and executed a Guaranty Agreement whereby he guaranteed payment by Suffolk pursuant to Lease 4096. (*Id*. at 5.) On or about August 17, 2003, Suffolk entered into a Lease Modification Agreement which modified the payment structure under Lease 4096. (*Id*.) Plaintiff alleges that Suffolk defaulted under the terms of Lease 4096 in that it failed to make the required monthly payments due February 11, 2004 and each month thereafter. (*Id*.)

Plaintiff, who obtained all rights to this transaction, alleges that it demanded payment, but that defendants "refuse and continue to refuse to make payment of the remaining indebtedness." (*Id*.) Plaintiff alleges that pursuant to the terms of Lease 4096, plaintiff declared Lease 4096 in default and demanded the accelerated balance, plus late charges, in the amount of $168,995.82.[5] (*Id*.) Plaintiff maintains that Thomas Uzzo, pursuant to his guaranty, is indebted to plaintiff for all amounts due and owing under Lease 4096. (*Id*.)

### C. Transaction III

On or about September 9, 2000, Suffolk entered into and executed Lease No. 4183 ("Lease 4183"), as Lessee, with The Terminal Marketing Company, Inc., as Lessor, leasing the equipment listed in the Equipment List attached thereto. (*Id*. at 6.) On or about September 9, 2000, Thomas Uzzo entered into and executed a Guaranty Agreement whereby he guaranteed payment by Suffolk

---

[5] Plaintiff calculates the balance owed on Lease 4096 as follows: amount financed ($322,908.40) less payments made ($161,848.00) plus late charges ($7,835.42) plus purchase option ($100.00) for a total amount owed of $168,995.82, plus interest, late charges and attorneys' fees and costs. (*Id.*)

pursuant to Lease 4183. (*Id*.) On or about August 17, 2003, Suffolk entered into a Lease Modification Agreement which modified the payment structure under Lease 4183. (*Id*.) Plaintiff alleges that Suffolk defaulted under the terms of Lease 4183 in that it failed to make the required monthly payments due September 9, 2000 and each month thereafter. (*Id*.)

Plaintiff, who obtained all rights to this transaction, alleges that it demanded payment, but that defendants "refuse and continue to refuse to make payment of the remaining indebtedness." (*Id*.) Plaintiff alleges that pursuant to the terms of Lease 4183, plaintiff declared Lease 4183 in default and demanded the accelerated balance, plus late charges, in the amount of $568,051.01.[6] (*Id.* at 6-7.) Plaintiff maintains that Thomas Uzzo, pursuant to his guaranty, is indebted to plaintiff for all amounts due and owing under Lease 4183. (*Id.* at 7.)

### D. Plaintiff's Right to the Transactions

The Terminal Marketing Company, Inc., Lessor of the Leases in question, sold and assigned its entire right, title and interest in and to Leases 3219, 4096 and 4183, including the equipment subject to same and the guaranties of each Lease, to Terminal Finance Corporation, II ("TFC, II"). (*Id.*) "Such assignment occurred pursuant to the terms of an Amended and Restated Lease Acquisition Agreement between Terminal Marketing Company, Inc. and TFC, II. By virtue of the sale and assignment, TFC, II became the owner of the [L]ease and guaranty; TFC, II paid Terminal Marketing Company, Inc. good and valuable consideration for the sale and transfer" of Leases 3219,

---

[6] Plaintiff calculates the balance owed on Lease 4183 as follows: amount financed ($580,612.56) less payments made ($32,989.35) plus late charges ($20,327.80) plus purchase option ($100.00) for a total amount owed of $568,051.01, plus interest, late charges and attorneys' fees and costs. (*Id.* at 7.)

4096 and 4183. (*Id.*)

TFC, II obtained the funds necessary to purchase its interest in the Leases and guaranties by issuing and selling Promissory Notes (the "Notes"). (*Id.*) To secure the obligations of TFC, II to the Noteholders, TFC, II assigned to Wells Fargo, as Indenture Trustee for the benefit of the Noteholders, all of TFC, II's rights in the Leases, the guaranties and the equipment subject to the Leases. (*Id.* at 7-8.) This assignment transpired pursuant to the Third Amended and Restated Indenture. (*Id.* at 8.) Wells Fargo, as Indenture Trustee for the benefit of the Noteholders, has the right to receive the monthly rental payments under the Notes, effective with the date of assignment of the Leases to it. (*Id.*)

Wells Fargo has also become the Servicer of the Leases and pursuant to a Subservicing Agreement effective as of February 14, 2001, has retained plaintiff to act as its subservicer agent. (*Id.*) Plaintiff alleges that Wells Fargo, as Indenture Trustee, Servicer and assignee of the Leases, has the right to enforce the Leases and guaranties against defendants. (*Id.*) Plaintiff also maintains that as subservicer agent to Wells Fargo, pursuant to the Subservicing Agreement, it has the right and power to enforce Well Fargo's rights under the Leases in either Well Fargo's name or its own. (*Id.*)

### E. Defendants' Contentions

Defendants maintain that they have acted in good faith with respect to the payments due and owing under all agreements in question and that they made all payments on each of the three Leases "until shortly after September 11, 2001, when the recording industry as it existed in New York City suffered great financial hardship as a result of the tragedy." (Defs. Mem. Opp. Summ. J. at 3.) As a result, Suffolk "began to experience difficulties in making the regularly scheduled [L]ease

payments." (*Id*.) According to defendants, the owner of Suffolk, Thomas Uzzo, spoke with plaintiff's representatives concerning the company's financial situation and was told that Suffolk could "either enter into an amended lease which reduced the amount of the monthly payments but increased the overall payments under the [L]ease, or [plaintiff] would seize all of the leased equipment." (*Id*.) Defendants contend that Thomas Uzzo "was forced into signing amendments to the [L]ease agreements" because if plaintiff reclaimed the equipment, Suffolk would not be able to sustain its operations. (*Id*.)

Defendants allege that after several months of making payments under the amended Leases, Suffolk realized that the market was worse than anticipated and that it would not be able to make all of the payments required under the amended Leases. (*Id*.) Consequently, in order to avoid default, Suffolk entered into negotiations to sell the equipment associated with the largest Lease to a third party, which according to defendants was done with plaintiff's approval. (*Id*. at 4.) Plaintiff allegedly conducted an appraisal of the equipment, and defendants found a purchaser who was willing to purchase the equipment at a price acceptable to plaintiff. (*Id*.) Defendants allege that after they had dealt with plaintiff "in good faith," plaintiff refused to allow Suffolk "to sell the equipment unless they could make up the difference between what they alleged was owed them and the sale price of the equipment." (*Id*.) Defendants maintain that this was not part of the prior negotiations between the parties. (*Id*.) According to defendants, Suffolk "acknowledged that it may owe additional monies after the sale of the equipment and had spoken with [plaintiff] about entering into some sort of payment plan for any such amount after it was established." (*Id*.)

Defendants maintain that plaintiff "interfered and barred" defendants from selling the equipment at a fair price, and, as a result, Suffolk was financially unable to pay the loans due and

owing to plaintiff on the three Leases. (*Id*.) Subsequently, plaintiff demanded all of the past due payments, which were not being made during the negotiation period, and refused to accept payment from defendants unless it was for the full value of the past amount due, which defendants were unable to pay. (*Id*.)

In addition, defendants dispute the amount owed on the Leases and contend that plaintiff did not properly credit all of the payments made in connection with the Leases. (*Id*. at 5.)

## II.     **Present Motions**

In the present motion, defendants move to dismiss the action due to improper venue or, in the alternative, to transfer of the action to the Eastern District of New York. (*Id*. at 6.) In addition, defendants seek an Order granting dismissal of all causes of action against Beatrice Uzzo for: (1) failure to properly serve or name the Estate of Beatrice Uzzo; (2) failure to meet the requirements of diversity jurisdiction with respect to defendant Beatrice Uzzo; and (3) failure to state a cause of action as against Beatrice Uzzo "in that the Guaranty signed by defendant Beatrice Uzzo was rendered null and void by the subsequent Lease Modification Agreement which was not guaranteed by Beatrice Uzzo." (*Id*.)

Plaintiff moves for summary judgment, seeking an award against Suffolk and Uzzo, jointly and severally, in the amount of $775,269.10 as of February 2, 2005, plus immediate and permanent title and possession of the equipment which is the subject of the Leases. (Pl. Mem. Supp. Summ. J. at 8.) Plaintiff also seeks attorneys' fees pursuant to the language of the Leases. (*Id*. at 9.) In addition, plaintiff, in the event the motion for summary judgment is denied, also moves for entry of an Order of Seizure as to the equipment. (*Id*.)

Additionally, plaintiff seeks leave of the Court to file an Amended Complaint to substitute the Estate of Beatrice Uzzo as defendant in place of Beatrice Uzzo who is deceased, and to amend the plaintiff's name to National City Commercial Capital Corporation. (*Id.*)

**DISCUSSION**

**I.     Defendants' Motions**

   **A.     Motion to Dismiss, or, In the Alternative, to Transfer Venue**

Defendants maintain that dismissal of this action is warranted because the action was improperly venued. (Defs. Mem. Opp. Summ. J. at 13.) In cases based on diversity of citizenship, such as the present one, 28 U.S.C. § 1391 sets forth the requirements for venue in a federal action. Specifically, the relevant portions of section 1391(a) provide that a civil action based on diversity may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a). Pursuant to section 1391(c), a corporate defendant is deemed to reside "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. §1391(c).[7] Section 1406(a) provides that if the venue in which the action was filed is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer

---

[7] Furthermore, "[i]n a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts." 28 U.S.C. §1391(c).

such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Defendants maintain that all defendants in the action are citizens of Suffolk County, New York and that all of the property in question is located in Suffolk County, New York. (Defs. Mem. Opp. Summ. J. at 13.) In addition, defendants maintain that the events that gave rise to this action happened between Suffolk, which is located in Suffolk County, New York, and plaintiff's corporate headquarters, which is located outside the state of New York. (*Id*. at 14.) Consequently, defendants contend that the proper venue for this action is the Eastern District of New York, not the Southern District. (*Id*.) We agree.

It is well-settled that "[u]nder section 1391(a)(2), venue may properly exist in more than one district, and thus plaintiff is not required to establish that his chosen venue 'has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere.'" *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001) (quoting *Kirkpatrick v. The Rays Group*, 71 F. Supp. 2d 204, 212 (W.D.N.Y. 1999) (citations omitted); *Neufeld v. Neufeld*, 910 F. Supp. 977, 986 (S.D.N.Y. 1996)). However, in order for a chosen venue to be proper, it is required that a substantial part of the events giving rise to the action occurred in that district. The following factors are relevant in determining whether venue is proper under section 1391 in an action involving a contract dispute: "(1) where the contract was negotiated or executed; (2) where it was to be performed; (3) where the alleged breach occurred; and (4) where the alleged harm occurred." *Indymac*, 167 F. Supp. 2d at 237 (citing *Kirkpatrick*, 71 F. Supp. 2d at 212); *see also Schomann Int'l Corp. v. Northern Wireless, Ltd.*, 35 F. Supp. 2d 205, 212 (N.D.N.Y. 1999). Plaintiff carries the burden of showing that venue in the chosen forum is proper. *See United States Envtl. Prot. Agency v. Port Auth. of New York and New*

9

*Jersey*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001).

In the case at bar, all defendants reside in Suffolk County, making the Eastern District a proper venue for this action. Although plaintiff contends that the choice of law provision set forth in each of the Leases, which states that "This Lease shall be deemed to have been made in Rockland County, New York," indicates that the parties agreed in advance that substantial events occurred in a County within the Southern District, this is simply not true. (Pl. Reply Mem. Supp. Summ. J. at 9.) This choice of law provision does not mean that the Leases were negotiated and executed in Rockland County or that this action may be venued in the Southern District of New York; rather, it signifies that the laws of the State of New York shall govern this action, which would be the case even if this action is transferred to the Eastern District. All substantial parts of the events giving rise to the present action, alleging failure to make payments pursuant to the terms of three separate Leases, occurred within the Eastern District. The Leases were to be performed in the Eastern District and the alleged breach occurred in the Eastern District. The payments were made from Suffolk's principal place of business in Suffolk County, the Leases indicate that Suffolk's address is in Suffolk County, the equipment is located in Suffolk County and the individual defendants reside in Suffolk County. No significant part of the transactions, events or omissions giving rise to plaintiff's claim occurred in the Southern District. Consequently, the Southern District is not a proper forum for this action.

As noted above, proper venue would lie in the Eastern District of New York with respect to all claims asserted herein. Therefore, rather than dismiss all claims pursuant to FED. R. CIV. P. 12(b)(3), in the interest of justice, we order that this case be transferred to the Eastern District of New York, where this case could have (and should have) been brought. *See* 28 U.S.C. § 1406(a)

("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *see also Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371-72 n.3 (2d Cir. 1966) ("Once a proper objection to venue is made by a party, § 1406(a) allows the district judge to 'dismiss, or if it be in the interest of justice, transfer such case' to a proper venue. And where the motion asks . . . that the suit be dismissed, the court may properly, . . . order it transferred.").

## CONCLUSION

For all of the foregoing reasons, the defendants' motion to transfer venue is granted, and we decline to consider the remaining motions submitted to the Court. Pursuant to 28 U.S.C. § 1406(a), venue of this case shall be transferred to the Eastern District of New York, and pursuant to Local Rule 83.1, the Clerk shall, upon expiration of five (5) days, mail to the Clerk for the Eastern District of New York certified copies of this Opinion and Order and of the docket entries in this case, and the originals of all other papers on file in this case.

SO ORDERED.

Dated: White Plains, New York
June 8, 2005

*William C. Conner*
Sr. United States District Judge